[No. 1466.]

THOMAS McNAMARA, Jr., and MICHAEL McNAMARA, Surviving Partners of Thomas McNamara, Jr., and Thomas McNamara, Sr., et al., Respondents, v. R. P. KEATING and R. PENDERGAST, Appellants.

Estoppel—Assignment—Receiving Benefit of Contract.—Plaintiffs, at defendant Keating's request, assigned their claims against certain mining companies to defendant Pendergast, defendant Keating promising to pay plaintiffs the amount of their assignment upon recovery of judgment. Defendant Keating and one Watson also assigned claims against the same mining companies to defendant Pendergast, said assignments being made for the purpose of collecting the same in one suit against each of the said mining companies. Suits were instituted by the said Pendergast and judgments for the full amounts recovered: *Held,* that in an action by plaintiffs against defendants for the amount of their claims recovered, defendants are estopped to deny the validity of plaintiffs' claims against the said mining companies, and that defendant Keating's request for the assignment of the claims to Pendergast was sufficient consideration for the promise on his part.

Appeal from the District Court of the State of Nevada, Storey county; *C. E. Mack*, District Judge:

Action by Thomas McNamara, Jr., Michael McNamara, *et al.*, against R. P. Keating and R. Pendergast. Judgment for plaintiffs, and defendants appeal. Affirmed.

The facts sufficiently appear in the opinion.

*Clayton Belknap* and *Robt. M. Clarke*, for Appellants:

I. The plaintiffs, nor either of them, ever had a valid claim of any nature against the said Bailey, Alabama and Humboldt Mining Companies, or either of them. They performed no work or labor for those companies or either of them, nor did those companies, or either of them, ever promise for or without a consideration to pay the plaintiffs or either of them any sum of money whatever for work or labor or other cause or thing.

II. The claim assigned by Thomas McNamara, Sr., to defendant Pendergast was purely fictitious, and in this claim neither the alleged copartnership, nor the plaintiffs, or either of them, had any interest whatever; they were not parties to the claim or to the assignment, and their names nowhere appear in the suits brought by Pendergast upon these assign-

ments or in the judgments obtained upon them. It is perfectly manifest that plaintiffs had no interest in these claims or in the money, if any, realized from them. At least, it is evident that these fictitious claims which arose after the alleged work was performed were not copartnership claims and cannot be recovered except by the legal representatives of Thomas McNamara, Sr.

III.   There is no consideration to support said promise, if a promise be alleged, on the part of Keating to pay plaintiffs, or either of them.   Keating was not a party to the suit, and no legal or equitable liability arises out of the suit against Keating in favor of plaintiffs, or either of them.   If there be any obligation on his part, it would be that Keating had received the money or property which in equity belonged to the plaintiffs, but no such claim is made in the pleadings, and the action is not based upon any such ground.

*Denis H. Kehoe*, for Respondents:

I.   The claims having been assigned to defendants and having been set up as a cause of action in the complaint and affidavits for attachment in the cases of *Pendergast* v. *The Bailey Mining Company*, *Pendergast* v. *The Humboldt Mining Company*, and *Pendergast* v. *The Alabama Mining Company*, the companies, having been legally served with notice of those claims, did not deny the validity of the claims and allowed judgment to be entered against the companies for the claims in full.   Keating and Pendergast, having recovered the full amount of the claims for their own use and benefit by selling the company's property on executions issued on judgments in which the claims of plaintiffs were included, cannot now, for the first time, deny the validity of the claims which they promised to pay plaintiffs for when collected, and, having collected them, must pay plaintiffs the amount of the claims.

II.   The making of the assignment of the claims plaintiffs held against the companies to Pendergast was sufficient consideration to maintain this action against Keating and Pendergast.   The testimony of Thomas McNamara in this case shows that Keating promised to pay plaintiffs the full amount of their claims at the time of making the assign-

ments to Pendergast; that he sent for the plaintiffs and brought them to the Savage office for that purpose, and there and then agreed and promised to pay plaintiffs their portion when collections were made from the companies on the suits which were afterwards brought in the name of Pendergast. The testimony also shows that Keating many times afterwards admitted the debt and promised to pay it as soon as he collected it; the testimony shows that it was collected in June, 1895. Pendergast made the claims of plaintiffs cause of action in his complaint against the Bailey, Humboldt and Alabama Mining Companies, and swore to their correctness in his affidavits for attachment against said companies, thus using the property of plaintiffs for his own use and benefit. The law will imply a promise on his part to pay plaintiffs.

By the Court, Bᴏɴɴɪꜰɪᴇʟᴅ, J.:

The plaintiffs, by their complaint, allege, in substance and in brief, that a partnership existed between them and Thomas McNamara, Sr., in certain claims against the Bailey, Humboldt and Alabama Mining Companies, corporations, in the sum of $300 against each of said companies, for work and labor done by them in the year 1889, on said companies' mining claims, located in Storey county, at the request of defendant, R. P. Keating, the then superintendent of said companies; that said Keating at the same time had a claim for the sum of $5,700 against each of said companies, for services as such superintendent; that the plaintiffs and Keating, in August, 1889, assigned all of their said claims to defendant, R. Pendergast, for the sole purpose of collecting the same in one suit against each of said companies in the name of said Pendergast; that the claims of the plaintiffs for the sum of $300, against each of said companies were assigned as aforesaid; that in consideration of such assignments the defendants promised to pay plaintiffs $900, the full sum of their said claims as soon as defendants realized and collected the same on judgments to be obtained against said companies; that suits were brought on all of said claims in the name of said Pendergast, in the district court of the state of Nevada, in and for Storey county, and judgments recovered for the full amount thereof against said companies,

with interest and costs of the suits; that the defendants have, within one year prior to the bringing of this action, realized on said claims and judgments and collected more than the whole of all of said claims assigned as aforesaid by the plaintiffs and Keating to Pendergast; that no part thereof has been paid to the plaintiffs; that on the 16th day of November, 1893, said Thomas McNamara, Sr., died, leaving the plaintiffs herein the sole surviving partners of said partnership, and plaintiffs prayed for judgment against the defendants for the said sum of $900, with interest and costs.

The defendants demurred to the complaint on several specific grounds. The demurrer was overruled, and the defendants answered, their answers consisting only of denials. The case was tried by the court sitting with a jury. The jury returned a verdict in favor of the plaintiffs and against the defendants for the sum of $900. Judgment was entered accordingly, with interests and costs of suit taxed at $135 40. The defendants appeal from said judgment and the order of the court denying their motion for new trial.

There is evidence tending to show the following state of facts: That defendant Keating, in 1880, became the superintendent of the Bailey Mining Company, a corporation, the Humboldt Mining Company, a corporation, and the Alabama Mining Company, a corporation; that there is a mine known as the Bailey lode or mine, situated in Storey county; that each of said mining companies owned segregated portions of said lode or mine; that defendant Keating, as such superintendent, had employed Thomas McNamara, Sr., to do the assessment work on this lode for said companies for several years, and had McNamara do all the assessment work for these companies on the Humboldt claim on said lode; that in April or May, 1889, Keating, as such superintendent, verbally leased to McNamara said mine; that by the terms of said lease the lessee was to run a tunnel and tap the bottom of a certain shaft, filled with water, situated on the Humboldt claim, and that the lessee was to have all the ore he might take out for six months from the date of tapping said shaft; that the plaintiffs, Thomas McNamara, Jr., and Michael McNamara, by agreement between the three, became partners with Thomas McNamara, Sr., in said lease, each of

the three to have an equal interest therein; that as such partners they prosecuted work under said lease on said mine; that during said work they struck some ore or rock, had it assayed; defendant Keating saw the assay, and sent for McNamara, Sr., and proposed to allow him $900 for the work that had been done, $300 to be paid by each company, if he would assign to R. Pendergast a claim for work in the sum of $300 against each of said companies; that McNamara, Sr., thinking that Keating wanted to break said lease, refused to make the assignment; that Keating sent for Thomas McNamara, Jr., who went to said defendant's office, and on inquiring of Keating if he wanted to break the lease, Keating informed him that they had no lease, that a verbal lease was not good; that McNamara, Jr., reported the same to McNamara, Sr., and they concluded that they had better take the $900 rather than get nothing; that Thomas McNamara, Sr., and Jr., returned to the office of defendant Keating, the superintendent, and that McNamara, Sr., executed the assignments as requested by Keating, with the knowledge and consent of plaintiffs, he (Keating) promising to pay therefor the $900 as soon as the same was realized on said claims and the judgments to be recovered against said several mining companies; that defendant Keating assigned to defendant R. Pendergast a claim of $5,700 against each of said companies for services rendered as superintendent thereof; that H. H. Watson assigned to said Pendergast a claim of $500 against each of said companies for services as secretary thereof, the aggregate amount of the claims so assigned being $6,500 against each company; that Pendergast brought suit in the district court of the state of Nevada, in and for Storey county, on these several assigned claims, against each company, and on the 5th day of December, 1889, recovered a judgment thereon, in each case, for the sum $6,500; that subsequently, and in 1890, the sheriff of Storey county duly sold the said several mining claims belonging to said several mining companies on executions issued on said several judgments, on the bids and for the sum of $5,000, $4,500 and $4,500, respectively; that the money derived from the sheriff's sales was paid to the sheriff by defendant Keating; that the several mining claims sold at said sheriff's sales

were bought in the name of Charles Herschfeld, without his knowledge at the time; that he paid nothing therefor; that Herschfeld assigned the sheriff's certificates of said sales to Joseph Marks, without consideration; that Joseph Marks received the sheriff's deeds for said mining claims; that Marks conveyed said mining claims to the Hearst Gold and Silver Mining Company, a corporation, without consideration; that said Hearst Company sold and conveyed 2,183½ feet of said mining claims to certain of the Comstock mining companies for $27,293 75, and conveyed to the California Title, Insurance and Trust Company, a corporation, 885 feet of said mining claims for an expressed consideration of $10; that over $21,000 of the amount of said sales to the Comstock mining companies have been received.

There are numerous objections made and points raised by counsel for appellants and urged by them against the sufficiency of the evidence and the validity of the judgment, among which are that " the plaintiffs, nor either of them, ever had a valid claim of any nature against the said Bailey, Alabama and Humboldt Companies, or either of them"; that " they performed no work or labor for these corporations, or either of them, nor did these companies, or either of them, ever promise for or without a consideration to pay the plaintiffs, or either of them, any sum of money whatever for work or labor or other cause or thing, and that these claims against said companies were 'purely fictitious.'"

While these alleged facts, if true, might have been proper grounds for the said companies to urge against the validity of these claims in the Pendergast suits, they certainly are not available to the defendants in this case. Whether these claims against said companies were valid or not is immaterial. But we discover nothing to impeach their validity, or the good faith of the plaintiffs, or their deceased partner, with reference thereto. As the evidence tends to show, they gave up whatever rights or privileges they had under the lease, which they considered to be and which might have been very valuable, and agreed to take in lieu thereof the sum of $900 for their work, and assigned these claims to Pendergast, at defendant Keating's request, on his promise to pay them said sum when he should realize the same on judg-

ments to be obtained against said companies. Instead of these claims being fraudulent as against said companies, the record shows that their validity was admitted by said companies, and the judgments of the district court in said suits affirmed it. Not only this, but the work done under the lease, on the Humboldt ground, it would seem, inured to the benefit of all three of the companies, as the assessment work did which had been done for a series of years, at the same place, by Thomas McNamara, Sr., at request of defendant Keating, the superintendent of said companies.

We can see nothing but a plain business transaction between all the parties concerned in leasing these claims and in annulling the lease by agreement, the plaintiffs agreeing to take $900 for the work done, and said companies being made responsible therefor through their superintendent, and defendant Keating agreeing to pay the same when realized as before stated.

Counsel for appellants argue that " there is no consideration to support said promise, if a promise be alleged, on the part of Keating, to pay plaintiffs, or either of them." Certainly the assignment of said claims to Pendergast at the request of Keating is sufficient consideration for said promise on his part. It appears from Keating's testimony that said assignments were of benefit and advantage, not only to him but to the said companies. His testimony is to the effect that one Bell held a fraudulent promissory note or notes against said companies in the sum of $15,000; that Bell was about to sue thereon; that in order the better to thwart the the unlawful designs of Bell and defeat the collection of his fraudulent notes, he (Keating) assigned his claim, and procured those other assignments to be made to Pendergast in order that suits might be brought thereon against each of said companies before Bell brought his suit; that this was done to protect the stockholders of said companies against Bell's said fraudulent demand, and that he (Keating) was at the time a stockholder in these companies to the amount of 30,000 shares, and that he was acting in the matter to protect his own interests as such stockholder. It clearly appears that the above-named objects and purposes were accomplished by means of said assigned claims, said judg-

ments and sales of said mines to said Comstock mining companies, and that more than enough money was received from said final sales to cover the whole amount of said judgments. Defendant Keating in his testimony admits, in effect, that one of the $300 claims assigned to Pendergast is correct, but claims that it is payable to the estate of McNamara, deceased, and not to the plaintiffs, as he is advised by his attorney. It appears, however, that each of the $300 claims grew out of the same transaction and is a part thereof, and that all of them are based on the same facts and circumstances, and that said plaintiffs, as the surviving partners of said deceased, are entitled by law to collect whatever is due thereon.

We regard all objections and points raised by appellant's counsel against the plaintiff's right to recover as being merely technical and without merit.

We are of opinion that the judgment and order appealed from should be affirmed.

It is so ordered.

BIGELOW, C. J.:   I concur.

BELKNAP, J., did not participate in the above decision.